ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| MARÍA DEL CARMEN RUSSE SANTOS<br><br>Apelante<br><br>v.<br><br>NEOMED CENTER, INC.<br><br>Apelada | **KLAN202301077** | *Apelación* procedente del Tribunal de Primera Instancia Sala Superior de Carolina<br><br>Civil Núm. TJ2020CV00210<br><br>Sobre: Discrimen por razón de Edad y Sexo Represalias en el Empleo Despido Injustificado |

Panel integrado por su presidente, el Juez Figueroa Cabán, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

Bonilla Ortiz, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 22 de enero de 2024.

Comparece ante este foro la Sra. María del Carmen Russe Santos (señora Russe o apelante) y nos solicita que revisemos una *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Carolina, la cual fue notificada el 29 de septiembre de 2023. Mediante el referido dictamen, el foro primario declaró *Ha Lugar* la *Moción de Sentencia Sumaria* presentada por NeoMed Center, Inc. (NeoMed o parte apelada). Consecuentemente, el foro primario desestimó con perjuicio la *Querella* instada por la apelante.

Por los fundamentos que se exponen a continuación, **CONFIRMAMOS** la *Sentencia* apelada.

### I.

El 16 de septiembre de 2020, la señora Russe presentó una *Querella* en contra de NeoMed por alegado discrimen por razón de edad y sexo al amparo de la Ley

Núm. 100 de 30 de junio de 1959, según enmendada, conocida como la *Ley Antidiscrimen en el Empleo*, 29 LPRA sec. 146; represalias en el empleo en virtud de la Ley Núm. 115 de 20 de diciembre de 1992, según enmendada, conocida como *Ley de Represalias contra el Empleado por Ofrecer Testimonio*, 29 LPRA sec. 194 *et seq.*; y por despido injustificado en virtud de la Ley Núm. 80 de 30 de mayo de 1967, según enmendada, conocida como *Ley Sobre Despidos Injustificados*, 29 LPRA secs. 185a *et seq.*, mediante el procedimiento sumario laboral.[1]

Mediante su reclamo, la apelante sostuvo que su supervisora inmediata, la Sra. Wanda Santana (señora Santana), la hostigaba laboralmente. Alegó que, aun cuando recibió evaluaciones satisfactorias y nunca le llamaron la atención, el 19 de junio de 2019, fue citada a una reunión con el Director de Recursos Humanos, el Sr. Alexis Maisonet (señor Maisonet) y la señora Santana para indicarle que no tenía los requisitos de una líder, no cumplía con los niveles de retención asignados, y le faltaba el respeto a los empleados.

Por consiguiente, expresó que, NeoMed le solicitó se reportara a la Farmacia de Gurabo donde trabajaría por un periodo de tres (3) meses, sin embargo, la apelante les indicó que era la regente de la Farmacia en Trujillo Alto, y no podía ir a la Farmacia en Gurabo. Arguyó que, como consecuencia de la reunión y lo allí solicitado, el 21 de junio de 2019, tuvo que acudir al médico, quien determinó que se encontraba ansiosa y deprimida y le recomendó descanso, regresando a su

---

[1] *Querella*, anejo I, págs. 1-15 del apéndice digital del recurso. El 20 de agosto de 2020, el foro primario notificó una *Orden*, mediante la cual determinó convertir el procedimiento a ordinario. Véase, *Orden*, anejo IV, pág. 57 del apéndice digital del recurso.

empleo el 25 de junio de 2019. Añadió que, el mismo día, 21 de junio de 2019, le envió un correo electrónico al señor Maisonet, expresándole su sentir sobre la señora Santana.

El 1 de julio de 2019, día que la señora Russe debió presentarse a la Farmacia de Gurabo, expresó que no se personó, debido a que era la responsable en la Farmacia de Trujillo Alto. Posterior a una reunión con el señor Maisonet y la señora Santana, relacionado con el traslado a la Farmacia de Gurabo, señaló que al salir se comunicó con su médico, quien la refirió al Hospital Panamericano del 9 al 15 de julio de 2019.

Arguyó, que advino en conocimiento que la señora Santana le comunicó al Departamento de Salud que la señora Russe no sería la regente de la Farmacia de Trujillo Alto y nombraba al licenciado Álvarez, una persona más joven que ella, y quien trabajaba en la Farmacia en Gurabo. Por último, expresó que fue despedida el 1 de julio de 2019, y el 31 de julio de 2019 le había enviado su carta de renuncia al señor Maisonet, no obstante, dicha carta era inoficiosa.

Por su parte, el 16 de julio de 2020, NeoMed presentó su *Contestación a Querella*.[2] Mediante esta, negaron que hayan despedido a la señora Russe, sino que la apelante abandonó su empleo al ausentarse sin comunicarlo. En esencia, alegaron que, posterior a una evaluación realizada a la apelante, entendieron que era necesario crear un Plan de Mejoramiento (Plan) para que mejorara su ejecutoria. Como parte del Plan, debía trasladarse a la Farmacia de Gurabo por tres (3) meses,

---

[2] *Contestación a Querella*, anejo III, págs. 19-56 del apéndice digital del recurso.

para que pudiera ser adiestrada y supervisada directamente por la señora Santana. No obstante, expresaron que cuando la apelante tomó conocimiento no estuvo de acuerdo, e incluso no se presentó a trabajar.

Posteriormente, arguyeron que la señora Russe presentó un certificado médico para la semana del 1 al 5 de julio de 2019, sin embargo, la semana del 8 al 12 de julio de 2019, no se presentó a trabajar, ni cursó comunicación alguna, por lo tanto, lo consideraron abandono de su empleo de forma voluntaria. Así las cosas, el 12 de julio de 2019, le enviaron a la apelante una carta de abandono de funciones, la cual no fue reclamada. No obstante, esbozaron que, el 18 de julio de 2019, recibieron un correo electrónico de la señora Russe, junto con un certificado médico emitido por el Hospital Panamericano, mediante el cual indicaba que la apelante estaría fuera de su empleo desde el 9 de julio al 19 de julio de 2019. Añadieron que, el 5 de agosto de 2019, recibieron una comunicación de parte de la señora Russe con fecha del 30 de julio de 2019, mediante la cual expresaba que se veía forzada a renunciar a su empleo efectivo el 31 de julio de 2019, por alegadas condiciones onerosas, ilegales y discriminatorias. Así las cosas, manifestaron que la apelante no tenía una causa de acción, puesto que, fue ella quien libre y voluntariamente abandonó su puesto.

Luego de varias incidencias procesales, el 2 de marzo de 2021, NeoMed presentó una *Solicitud de Sentencia Sumaria*, mediante la cual desglosó 76 hechos esenciales y pertinentes sobre los cuales no había controversia sustancial de hechos, y manifestó que lo

que restaba era atender los asuntos de derecho.[3] En particular, reiteraron que la señora Russe renunció de forma voluntaria, puesto que, conocía que el Reglamento de Empleados de NeoMed dispone que se considera un abandono de empleo cuando el empleado se ausente por tres (3) días o más sin notificar. Como consecuencia, el 12 de julio de 2019, le enviaron a la apelante una carta por abandono de funciones, mientras que el 5 de agosto de 2019, recibieron un comunicado de la señora Russe informando que se veía obligada a renunciar efectivo al 31 de julio de 2019.

Además, añadieron que la apelante nunca presentó una queja en contra de su supervisora, conforme lo requiere el Reglamento. Asimismo, sostuvieron que la señora Russe conocía sobre el procedimiento de quejas y agravios que establece el Reglamento, sin embargo, no agotó los remedios disponibles. Además, que, no tenían conocimiento, si alguno, de las situaciones que estableció la apelante en el comunicado que había enviado.

De otra parte, esbozaron que la apelante no fue discriminada por razón de su edad o su sexo. Argumentaron que, cuando establecieron un Plan de Mejoramiento, había sido creado a base de su evaluación y desempeño. Además, que su traslado era temporero, y luego regresaría a la Farmacia en Trujillo Alto. A su vez, que la persona que asumió de forma temporera la posición que ocupaba la apelante, era empleado de NeoMed, y su edad era cercana a la de la señora Russe.

---

[3] *Solicitud de Sentencia Sumaria*, anejo V, págs. 58-317 del apéndice digital del recurso.

Por consiguiente, reiteraron que la señora Russe no logró activar una reclamación de discrimen.

Finalmente, alegaron que no hubo represalias, puesto que, no hubo un despido, y tampoco la apelante utilizó los procedimientos para presentar quejas y agravios que establece el Reglamento, previo al Plan de Mejoramiento. Ante ello, solicitaron que el foro primario dictara sentencia sumaria a su favor y, por consiguiente, desestimara la *Querella* presentada.

El 25 de enero de 2022, NeoMed presentó *Moción para Suplementar Solicitud de Sentencia Sumaria*.[4] En la cual, desglosaron 101 hechos incontrovertidos de las alegadas admisiones de la apelante en su deposición.

En desacuerdo, el 2 de abril de 2022, la señora Russe presentó *Oposición a "Solicitud de Sentencia Sumaria" y "Moción para Suplementar Solicitud de Sentencia Sumaria"*.[5] Mediante la cual, expuso que existían hechos esenciales en controversia que impedían se dictara sentencia sumaria. En síntesis, dispuso que no hubo una razón justificada para removerla de su puesto como farmacéutica regente de Trujillo Alto, y establecer un plan de mejoramiento en una farmacia para la cual no fue contratada. Añadió que, tomaron represalias en su contra al haber cuestionado el Plan de Mejoramiento y negarse a trasladarse a la farmacia de Gurabo, como a su vez, haber cursado al Director de Recursos Humanos una queja en contra de su supervisora.

En cuanto a la causa de acción por discrimen, expresó que contaba con evidencia de discrimen por razón

---

[4] *Moción para Suplementar Solicitud de Sentencia Sumaria*, anejo VI, págs. 318-650 del apéndice digital del recurso.
[5] *Oposición a "Solicitud de Sentencia Sumaria" y "Moción para Suplementar Solicitud de Sentencia Sumaria*, anejo VII, págs. 651-948 del apéndice digital del recurso.

de sexo y edad, al NeoMed otorgarle su puesto a una persona del sexo masculino y más joven que ella. Por consiguiente, manifestó que no hubo causa justificada para su despido.

Finalmente, alegó que su despido fue uno constructivo, debido a las constantes acciones adversas recibidas por NeoMed. Arguyó que, intentó denunciar y solicitar el cese de las actuaciones de la señora Santana ante el Departamento de Recursos Humanos, sin embargo, resultaron infructuosas, puesto que, las actuaciones de su supervisora incrementaron y continuaron agravando la situación laboral y su condición emocional. Así las cosas, solicitó fuera denegada la solicitud de sentencia sumaria presentada por NeoMed.

El 5 de mayo de 2022, la parte apelada presentó su réplica a la oposición de sentencia sumaria.[6] Mediante la cual, argumentó que la señora Russe no pudo controvertir los hechos materiales que presentaron en su solicitud de sentencia sumaria. A su vez, reiteraron que la apelante no fue despedida, sino que renuncio de forma libre y voluntaria.

Evaluados los argumentos de las partes, el 29 de septiembre de 2023, el foro primario notificó la *Sentencia* apelada.[7] El foro *a quo* declaró *Ha Lugar* la *Solicitud de Sentencia Sumaria* presentada por NeoMed, al determinar que no existían hechos esenciales y pertinentes en controversia. En consecuencia, desestimó -con perjuicio- la *Querella* instada por la señora Russe.

---

[6] *Réplica a "Oposición a Solicitud de Sentencia Sumaria y Moción para Suplementar Solicitud de Sentencia Sumaria"*, anejo VIII, págs. 949-1021 del apéndice digital del recurso.
[7] *Sentencia*, anejo IX, págs. 1022-1024 del apéndice digital del recurso.

En desacuerdo, el 13 de octubre de 2023, la apelante presentó una solicitud de determinaciones de hechos adicionales y moción de reconsideración.[8] Por su parte, el 30 de octubre de 2023, NeoMed presentó su oposición.[9]

El 31 de octubre de 2023, el foro primario notificó una *Resolución*, mediante la cual denegó la *Solicitud de Determinaciones de Hechos Adicionales y Moción de Reconsideración de Sentencia* presentada por la apelante.

Aun inconforme, el 30 de noviembre de 2023, la señora Russe acudió ante nos y mediante el recurso de *Apelación* formuló los siguientes señalamientos de error:

> Primero: Declarar ha lugar la moción de sentencia sumaria presentada por la apelada y dictar sentencia sumariamente en claro incumplimiento con la Regla 36.3 (e) de Procedimiento Civil.
>
> Segundo: Declarar ha lugar la moción de sentencia sumaria presentada por la apelada y dictar sentencia sumariamente a pesar de que de las determinaciones de hechos formuladas por el TPI (ninguna) no surge actuación alguna que justifique el despido de la apelante.
>
> Tercero: Declarar ha lugar la moción de sentencia sumaria presentada por la apelada y dictar sentencia sumariamente en la que desestimó todas las reclamaciones de la apelante, a pesar de existir controversias de hechos esenciales, que impiden disponer de este pleito sumariamente.

El 26 de diciembre de 2023, NeoMed presentó su *Alegato de la Parte Apelada* y sostuvo, entre otros asuntos, que lo que procede es confirmar la *Sentencia* apelada.

Con el beneficio de la comparecencia de ambas partes, procedemos a disponer del recurso de epígrafe.

---

[8] *Solicitud de Determinaciones de Hechos Adicionales y Moción de Reconsideración de Sentencia*, anejo X, págs. 1025-1039 del apéndice digital del recurso.
[9] Oposición a "*Solicitud de Determinaciones de Hechos Adicionales y Moción de Reconsideración de Sentencia*", anejo XI, págs. 1040-1050 del apéndice digital del recurso.

## II.

### -A-

En nuestro ordenamiento, el mecanismo de sentencia sumaria procura, ante todo, aligerar la adjudicación de aquellos casos en los cuales no existe una controversia de hechos real y sustancial que exija la celebración de un juicio en su fondo. *Rodríguez García v. UCA*, 200 DPR 929 (2018). Este mecanismo, está instituido en la Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36, y su función esencial es el permitir que, en aquellos litigios de naturaleza civil, una parte pueda mostrar, previo al juicio, que tras las partes contar con la evidencia que ha sido debidamente descubierta, no existe una controversia material de hecho que deba ser dirimida en un juicio plenario; y que, por tanto, el tribunal está en posición de aquilatar esa evidencia para disponer del caso ante sí. *Rodríguez Méndez, et als v. Laser Eye*, 195 DPR 769 (2016).

La solicitud de sentencia sumaria puede ser interpuesta por cualquiera de las partes que solicite un remedio por medio de una moción fundamentada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes. Regla 36.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.2. Por consiguiente, se dictará sentencia sumaria, si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, junto a cualquier declaración jurada que se presente, si alguna, demostrasen que no hay controversia real y sustancial sobre algún hecho esencial y pertinente y que; como cuestión de derecho, procediese hacerlo. Regla 36.3(e)

de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3(e); SLG *Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414 (2013).

En cuanto a los hechos esenciales y pertinentes a los que se refieren el precitado cuerpo de Reglas, es conocimiento que estos son los que se conocen como hechos materiales. Regla 36.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.1. Al respecto, un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. Además, la controversia sobre el hecho material tiene que ser real. Esto es, que una controversia no es siempre real o sustancial o genuina. Por ello, la controversia deberá ser de una calidad suficiente como para que sea necesario que un juez la dirima a través de un juicio plenario. Regla 36.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.1; *Ramos Pérez v. Univisión*, 178 DPR 200, 213-214 (2010).

En lo particular, la Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3, detalla el procedimiento a seguir por las partes al momento de solicitarle al tribunal que dicte sentencia sumariamente a su favor. A esos efectos, la mencionada regla establece que una solicitud a su amparo, deberá incluir lo siguiente: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen

estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable; y (6) el remedio que debe concederse. Regla 36.3(a)(1-6) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3(a)(1-6).

Por otro lado, la parte que se oponga a que se dicte sentencia sumaria deberá controvertir la prueba presentada por la parte que la solicita. Para ello, deberá presentar su contestación a la moción de sentencia sumaria dentro del término de veinte (20) días de su notificación. Dicho escrito, además de cumplir con los mismos requisitos con los que tiene que cumplir el proponente, deberá contener:

[…]

(b) […]

(2) [U]na relación concisa y organizada, con una referencia a los párrafos enumerados por la parte promovente, de los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen los mismos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;

(3) una enumeración de los hechos que no están en controversia, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;

(4) las razones por las cuales no debe ser dictada la sentencia, argumentando el derecho aplicable. Regla 36.3 (b)(1-4)), 32 LPRA Ap. V, R. 36.3(b)(1-4).

Ahora bien, cuando se presente una moción de sentencia sumaria y se sostenga en la forma que establece

la Regla 36 de Procedimiento Civil, *supra*, la parte contraria no podrá descansar solamente en las aseveraciones o negaciones contenidas en sus alegaciones; sino que dicha parte estará obligada a contestar en forma tan detallada y específica como lo haya hecho la parte promovente. De no hacerlo así, se dictará la sentencia sumaria en su contra, si procede. Regla 36.3(c) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3(c). Por tanto, el oponente deberá controvertir la prueba presentada con evidencia sustancial y no podrá simplemente descansar en sus alegaciones. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 66 (2018).

Quiere decir que, para derrotar una solicitud de sentencia sumaria, la parte opositora deberá presentar contradeclaraciones juradas y contradocumentos que pongan en controversia los hechos presentados por el promovente. *Ramos Pérez v. Univisión*, supra, pág. 215. Si el oponente no controvierte los hechos propuestos de la forma en que lo requiere la Regla aplicable, tales hechos se podrán considerar como admitidos y se dictará la sentencia en su contra, si procediese. *Roldán Flores v. M. Cuebas, Inc.,* supra. De igual forma, si la parte contraria no presenta su contestación a la sentencia sumaria en el término reglamentario provisto, se entenderá que la moción de sentencia sumaria quedó sometida para la consideración del tribunal. Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, Regla 36.3.

Por último, es preciso recordar que nuestro Máximo Foro ha dispuesto que, como Tribunal de Apelaciones, nos encontramos en igual posición que el Tribunal de Primera Instancia para evaluar la procedencia o no de conceder una solicitud de sentencia sumaria. Meléndez González

et al. v M. Cuebas, 193 DPR 100, 122 (2015). A tales efectos, nuestra revisión será una *de novo* y el análisis que realizaremos se regirá por las disposiciones contenidas en la Regla 36 de Procedimiento Civil, *supra*, y su jurisprudencia interpretativa.

Por ello, de entender que procede revocar una sentencia sumaria, debemos indicar cuáles hechos esenciales y pertinentes están en controversia, e igualmente decir cuáles están incontrovertidos. Por el contrario, si encontramos que los hechos materiales (esenciales y pertinentes) realmente están incontrovertidos, nuestra revisión se limitará a revisar *de novo* si procedía en derecho su concesión. Es decir, si el Tribunal de Primera Instancia aplicó correctamente el derecho o no. *Íd*, págs. 118-119.

-B-

La Ley Núm. 2 de 17 de octubre de 1961, conocida como Ley de Procedimiento Sumario de Reclamaciones Laborales, 32 LPRA sec. 3118 et seq. (Ley Núm. 2) instituye un procedimiento sumario de adjudicación de pleitos laborales dirigido a la rápida consideración y adjudicación de aquellas reclamaciones de empleados contra sus patronos relativas a salarios, beneficios y derechos laborales.

Es por ello que, ciertas disposiciones estatuidas en la aludida ley son más favorables al obrero que al patrono. *Rivera v. Insular Wire Products Corp.*, 140 DPR 912, 922 (1996). De ahí que se le imponga una carga procesal más onerosa a la parte con mayores medios económicos, el patrono, sin privarle de poder defender sus derechos. *Íd*., pág. 924. De esta forma, el legislador implantó la política pública estatal de

proteger a los empleados y desalentar los despidos sin justa causa.

En nuestro ordenamiento se ha reconocido que la naturaleza sumaria de este procedimiento responde a la política pública de "abreviar el procedimiento de forma que sea lo menos oneroso posible para el obrero." *Dávila, Rivera v. Antilles Shipping, Inc.*, 147 DPR 483, 492 (1999).

A fin de lograr la consecución de dichos propósitos, la Ley establece: (1) términos cortos para presentar la contestación de la querella o demanda; (2) criterios para conceder una sola prórroga para la contestación de la querella o demanda; (3) un mecanismo para diligenciar el emplazamiento del patrono; (4) el proceso para presentar defensas y objeciones; (5) límites a la utilización de los mecanismos de descubrimiento de prueba; (6) la aplicabilidad limitada de las Reglas de Procedimiento Civil en todo aquello que no esté en conflicto con el procedimiento sumario; (7) que ninguna de las partes pueda someter más de un interrogatorio o deposición, ni tomar una deposición a la otra parte después de haber sometido un interrogatorio ni viceversa, excepto cuando concurran circunstancias excepcionales; y, (8) la obligación de los tribunales de emitir sentencia en rebeldía cuando el patrono incumple con el término para contestar la querella o demanda. *Vizcarrondo v. MVM, Inc. et al.*, 174 DPR 921 (2008).

Cónsono con lo anterior, solo se ha permitido que este Tribunal revise resoluciones interlocutorias provenientes de un procedimiento sumario al amparo de la referida ley cuando dicha resolución sea dictada sin

jurisdicción, de forma ultra vires o en casos extremos en los cuales los fines de la justicia requieran la intervención de este Tribunal. *Dávila, Rivera v. Antilles Shipping, Inc.*, supra, pág. 498.

La razón de ser de la norma general de abstención es evitar dilaciones que normalmente las revisiones de determinaciones interlocutorias conllevan, lo que precisamente derrotaría el fin perseguido por el procedimiento sumario. *Dávila, Rivera v. Antilles Shipping, Inc.*, supra, pág. 498; *Medina Nazario v. McNeill Healthcare LLC,* 194 DPR 723 (2016).

Ahora bien, el Tribunal Supremo ha enfatizado que "el procedimiento sumario, no es, ni puede ser, una carta en blanco para la concesión de remedios a obreros que no han justificado adecuadamente, mediante alegaciones o prueba, hechos que avalen, su derecho a lo reclamado." *Rivera v. Insular Wire Products Corp.*, supra, pág. 928. Asimismo, se ha determinado que el carácter reparador y expedito del procedimiento sumario no puede tener el efecto de privar al patrono querellado de un debido proceso de ley. *Lucero v. San Juan Star*, 159 DPR 494, 516-517 (2003).

-C-

La Ley Núm. 100 de 30 de junio de 1959, según enmendada, mejor conocida como *Ley contra el Discrimen en el Empleo*, 29 LPRA sec. 146, *et seq.*, prohíbe toda acción discriminatoria de un patrono contra su empleado por razón de edad, raza, color, sexo, origen o condición social. *Hernández v. Trans Oceanic Life Ins. Co.,* 151 DPR 754, 773 (2000). En particular, la referida ley protege a los empleados y aspirantes a empleo contra

discrímenes de los patronos o de las organizaciones obreras. *Íd*.

Bajo las disposiciones de esta ley, el reclamante debe establecer un caso *prima facie* de discrimen. *López Fantauzzi v. 100% Natural*, 181 DPR 92, 121 (2011). Es decir, que el peso de la prueba corresponde inicialmente al empleado. *Íd*., pág. 122. De este modo, el Tribunal Supremo de Puerto Rico ha destacado que, cuando un empleado inste una acción al amparo de la Ley Núm. 100, *supra*, deberá demostrar: (1) que hubo un despido o acto perjudicial; (2) que éste se realizó sin justa causa; y (3) algún hecho base que lo ubique dentro de la modalidad de discrimen bajo la cual reclama." *Íd*., pág. 123; *Ramos Pérez v. Univisión*, supra, pág. 222.

Así, corresponde al empleado desfilar prueba en torno a ciertos hechos básicos que configuren la modalidad de discrimen imputada, a fin de que el juzgador tenga, en términos generales, una base racional y motivos para inferir que la acción tomada en su contra fue discriminatoria. *Díaz v. Windham Hotel Corp*., 155 DPR 364, 387-389 (2001).

Una vez el empleado establece el caso *prima facie* de discrimen, el patrono podrá rebatirla probando que la existencia del discrimen es menos probable que su inexistencia. *Odriozola v. S. Cosmetic Dist. Corp*., 116 DPR 485, 502 (1985). Ello podrá hacerlo de tres maneras: (1) derrotando el hecho básico (la ausencia de justa causa); (2) destruir el hecho presumido (que el despido fue por causa de motivos discriminatorios); o (3) destruir el hecho básico y el presumido a la vez. *López Fantauzzi v. 100% Natural*, supra, pág. 124. Dicho de otro modo, debe probar que no se tomó la acción adversa

o que existió justa causa para la acción tomada; es decir, demostrar que la acción no respondió a un ánimo discriminatorio.

De rebatirse la presunción de discrimen, el empleado nuevamente tendrá oportunidad de demostrar la existencia del discrimen, aunque sin el beneficio de la presunción inicial. *SLG Hernández-Beltrán v. TOLIC*, 151 DPR 754, 775 (2000). Es decir, que el empleado tendrá que probar hechos específicos de los cuales surja el discrimen. *Íd*. Sólo si queda probado que el patrono incurrió en conducta discriminatoria contra el empleado, tendrá que indemnizarlo por los daños que ello le hubiera ocasionado. *Mestres Dosal v. Dosal Escandón*, 173 DPR 62, 69 (2008); 29 LPRA sec. 146.

-D-

La Asamblea Legislativa procuró establecer como política del Estado Libre Asociado de Puerto Rico "la protección de los empleos de los trabajadores, tanto de las instrumentalidades del Estado Libre Asociado como del sector privado, cuando comparecen ante la Legislatura o alguna de sus comisiones, y ante foros administrativos y judiciales para colaborar con dichos foros." Véase, Exposición de Motivos de la Ley Núm. 115-1991, según enmendada, conocida como *Ley de Represalias contra el Empleado por Ofrecer Testimonio*, 29 LPRA sec. 194 *et seq.* El propósito de dicho estatuto fue proteger a los empleados que fueran discriminados por medio de represalias por participar en alguna de las actividades protegidas. *Ocasio v. Kelly Services*, 163 DPR 653, 684 (2005). Particularmente, el Artículo 2 de la Ley de Represalias, 29 LPRA sec. 194a, establece que:

(a) Ningún patrono podrá despedir, amenazar o discriminar contra un empleado con relación a los términos, condiciones, compensación, ubicación, beneficios o privilegios del empleo porque el empleado ofrezca o intente ofrecer, verbalmente o por escrito, cualquier testimonio, expresión o información ante un foro legislativo, administrativo o judicial en Puerto Rico, así como el testimonio, expresión o información que ofrezca o intente ofrecer, en los procedimientos internos establecidos de la empresa, o ante cualquier empleado o representante en una posición de autoridad, cuando dichas expresiones no sean de carácter difamatorio ni constituyan divulgación de información establecida por ley.

Ahora bien, para ejercer una acción por represalias, la Ley provee un plazo de 3 años, desde la fecha que ocurrió la alegada violación, para instar una acción civil en contra del patrono y solicitar que se le compense por los daños reales sufridos, las angustias mentales, la restitución en el empleo, los salarios dejados de devengar, beneficios y honorarios de abogado. *Íd.*

Por otro lado, cabe señalar que, todo empleado tiene dos vías probatorias bajo la Ley de Represalias, *supra*, la directa y la indirecta. *Wilfredo Rivera Menéndez v. Action Service Corp.*, 185 DPR 431, 445 (2012). En la vía directa, el empleado deberá probar la violación mediante evidencia directa o circunstancial y demostrar que hubo un nexo causal entre la conducta del demandado y el daño sufrido por el empleado. *Íd.* En cambio, mediante la vía indirecta, el empleado podrá establecer un caso *prima facie* de violación a la ley probando lo siguiente: (1) que participó en una actividad protegida por la Ley Núm. 115-1991; y (2) que fue subsiguientemente despedido, amenazado o discriminado en su contra de su empleo por el patrono.

*Feliciano Martes v. Sheraton Old San Juan*, 182 DPR 368, 393-394 (2011).

Ahora bien, bajo un acercamiento caso a caso, y luego de que el empleado logre establecer un caso *prima facie* por represalias, el trabajador deberá presentar evidencia que establezca que: (1) fue tratado de forma distinta a otros empleados; (2) que existió un patrón de conducta antagonista en su contra; (3) que las razones articuladas por el patrono para fundamentar su acción adversa están plagadas de inconsistencias; o (4) cualquier otra evidencia que obre en el expediente para establecer el elemento del nexo causal. *Íd*.

En síntesis, la Ley de Represalias crea una presunción *juris tantum* de violación a la misma a favor del querellante, al disponer que este establece un caso prima facie una vez prueba que participó en una actividad protegida y que fue subsiguientemente despedido, amenazado, o discriminado en su contra en el empleo. *Wilfredo Rivera Menéndez v. Action Service Corp*, supra, pág. 446; *Marín v. Fastening Systems, Inc*., 142 DPR 499, 511 (1997). Una vez el querellante establezca de forma *prima facie* su caso, el patrono deberá alegar y fundamentar una razón legítima y no discriminatoria para el despido para lograr rebatir la presunción. Ley Núm. 115-1991, *supra*. Si el patrono cumple con la obligación anterior, el empleado deberá demostrar que la razón alegada por el patrono era un mero pretexto para el despido. *Íd*.

-**E**-

La Ley Núm. 80 del 30 de mayo de 1976, según enmendada, y conocida como *Ley Sobre Despidos Injustificados*, 29 LPRA sec. 185a et seq., fue creada

con el fin primordial de proteger, de manera más efectiva, el derecho del obrero puertorriqueño a la tenencia de su empleo.[10] A su vez, procura desalentar la práctica de despedir a los empleados de forma injustificada y otorga a los trabajadores remedios justicieros y consustanciales con los daños causados por un despido injustificado. Véase, Exposición de Motivos de la Ley Núm. 80, *supra.*; *SLG Zapata-Rivera v. J.F. Montalvo*, supra, pág. 424; *Feliciano Martes v. Sheraton*, supra.

El Artículo 1 del referido estatuto, establece que todo empleado de comercio, industria o cualquier otro negocio o sitio de empleo que sea despedido de su cargo, sin que haya mediado justa causa, tendrá derecho a recibir de su patrono una indemnización. Dicha indemnización se conoce como la "mesada" y su cuantía dependerá del tiempo durante el cual el empleado ocupó su puesto y del sueldo que devengaba. 29 LPRA sec. 185a; *Whittenburg v. Col. Ntra. Sra. del Carmen*, 182 DPR 937, 950 (2011).

Por su parte, el Artículo 2 de la Ley Núm. 80, 29 LPRA sec. 185b, detalla las circunstancias que constituyen "justa causa" para el despido e incluye motivos fundados en la conducta del empleado, así como circunstancias de índole empresarial. Así pues, en lo pertinente, las causas atribuibles a los empleados que constituyen justa causa para el despido se preceptúan en

---

[10] En el 2017, la Ley Núm. 80, *supra*, sufrió unos cambios sustanciales a raíz de la aprobación de la Ley Núm. 4-2017, 29 LPRA sec. 121 *et seq.*, mejor conocida como la *Ley de Transformación y Flexibilidad Laboral*, que entró en vigor el 26 de enero de 2017. Sin embargo, la ley aplicable a la apelante es la Ley Núm. 80, según enmendada hasta el 2008, por haber sido reclutado previo a la vigencia de la referida Ley Núm. 4-2017.

los incisos (a), (b) y (c) del Artículo 2 de la aludida ley y estas son las siguientes:

(a) Que el obrero siga un patrón de conducta impropia o desordenada.

(b) La actitud del empleado de no rendir su trabajo en forma eficiente o de hacerlo tardía y negligentemente o en violación de las normas de calidad del producto que se produce o maneja por el establecimiento.

(c) Violación reiterada por el empleado de las reglas y reglamentos razonables establecidas por el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado.

[…] 23 LPRA sec.185b.

Ahora bien, a pesar de que la Ley Núm. 80, *supra*, provee una lista de circunstancias que justifican el despido de un empleado o empleada, la aludida ley no pretende ser un código de conducta limitada a una lista de faltas claramente definidas con sus sanciones correspondientes. *Jusino et als. V. Walgreens*, 155 DPR 560, 573 (2001). A estos efectos, el patrono tiene la potestad de adoptar reglamentos internos y establecer normas de conducta en el lugar de trabajo que estime necesarias para conseguir el buen funcionamiento de la empresa. *Íd*. Los empleados estarán sujetos a cumplir con dichos reglamentos y normas, siempre y cuando éstos cumplan con el criterio de razonabilidad. *Íd*. De este modo, para que las violaciones de las normas del empleo constituyan justa causa para el despido, el patrono tiene la obligación de probar la razonabilidad de las normas establecidas, que le suministró copia escrita de éstas al empleado y que el empleado las violó. *Rivera Águila v. K-Mart de PR*, 123 DPR 599, 613-614 (1942). En cambio, no se considerará despido por justa causa aquel que se hace por el mero capricho del patrono o sin razón

relacionada con el buen y normal funcionamiento del establecimiento. *Srio. del Trabajo v. GP Inds., Inc.*, 153 DPR 223, 241 (2001).

En fin, el principio rector que gobierna el despido por justa causa dispuesto en el Artículo 2 de la Ley Núm.80, *supra*, es aquel que delimita las circunstancias en que éste se produce. Es decir, cuando tiene su origen en alguna razón o motivo vinculado a la ordenada marcha y normal funcionamiento de una empresa y no en el libre arbitrio o capricho del patrono. *Íd.*

Finalmente, el Artículo 11 de la Ley Núm. 80, *supra*, crea una presunción de que todo despido es injustificado. 29 LPRA sec. 185k. Por ello, el patrono, mediante preponderancia de prueba, debe demostrar lo contrario, es decir, que en efecto hubo justa causa para el despido. *Rivera Figueroa v. The Fuller Brush Co.*, 180 DPR 894, 906-907 (2011); *Rivera v. Pan Pepin,* 161 DPR 681,688 (2004); *Delgado Zayas v. Hosp. Interamericano*, 137 DPR 643, 650 (1994).

Sin embargo, para activar la presunción generada por la Ley Núm. 80, *supra*, hace falta que haya ocurrido un despido. Así, el empleado tiene que demostrar que cumple con los requisitos de la causa de acción: (1) que fue empleado de un comercio, industria u otro negocio; (2) que su contrato era por tiempo indeterminado; (3) que recibía remuneración por su trabajo; y que fue despedido de su puesto. *Rivera Figueroa v. The Fuller Brush Co.*, supra, pág. 907.

Sobre lo anterior, el despido constructivo o tácito se define como "la renuncia del empleo motivada por actuaciones del patrono dirigidas a inducirlo o forzarlo a renunciar tales como imponerle o intentar imponerle

condiciones de trabajo más onerosas, reducirle el salario, rebajarlo en categoría o someterlo a vejámenes o humillaciones de hecho o de palabra." 29 LPRA sec. 185e. Véase, además: *Rivera Figueroa v. The Fuller Brush Co.*, supra, pág. 907.

Por tanto, existe un despido constructivo cuando un empleado se ve forzado a presentar su renuncia debido a las condiciones de trabajo onerosas impuestas por el patrono. *Rivera Figueroa v. The Fuller Brush Co.*, supra, pág. 908. En otras palabras, estamos ante un despido constructivo cuando los actos voluntarios e injustificados de un patrono tienen el propósito de obligar a un empleado a dejar su cargo siendo esta la única alternativa razonable que le queda al empleado. *SLG Hernández-Beltrán v. TOLIC*, supra, pág. 777; *Vélez de Reilova v. Ramírez Palmer Bros. Inc.*, 94 DPR 175, 178 (1967).

Como se aprecia del párrafo que antecede, en los casos de despido constructivo, la renuncia debe ser motivada por la imposición de condiciones onerosas. *Rivera Figueroa v. The Fuller Brush Co.*, supra, pág. 907. En estos casos, es preciso que el empleado pruebe que la única alternativa razonable que le quedaba era el abandono de su cargo. *Íd.*, págs. 908-909. Es decir, no basta con una mera alegación de que la renuncia fue un despido constructivo. *Íd.*, pág. 909. Por supuesto, el empleado tiene que demostrar el hecho base del despido, ya sea directo o en su modalidad constructiva o tácita. *Íd.*

Así, en *Rivera Figueroa v. The Fuller Brush Co.*, supra, pág. 908, se aclaró que:

[…] no basta con cualquier molestia o condición antipática en el empleo, y cuando se trate de vejámenes y humillaciones, estos deben ser de magnitud sustancial. Tampoco se determina la magnitud y efecto de los actos patronales con referencia a la visión subjetiva del empleado individual; más bien, se utiliza un criterio objetivo, al examinar si una persona razonable se sentiría forzada a renunciar como resultado de las acciones del patrono.

### III.

En el caso de autos, la señora Russe alega que erró el foro primario al declarar ha lugar la solicitud de sentencia sumaria presentada por NeoMed. Asimismo, señala que el foro primario abusó de su discreción al desestimar las causas de acción, y determinar que no existen hechos esenciales y pertinentes en controversia. Veamos.

Tras una lectura de la *Solicitud de Sentencia Sumaria* presentada por NeoMed observamos que cumplieron con las disposiciones de la Regla de Procedimiento Civil, *supra*. La parte apelada logró demostrar los hechos incontrovertidos, el derecho aplicable y el remedio solicitado en la referida solicitud. Por lo cual, el foro primario no incurrió en el error señalado.

De otra parte, la apelante alega que fue discriminada por razón de edad y sexo, al haber sido reemplazada de su puesto de regente en la Farmacia de Trujillo Alto por una persona del sexo masculino, y más joven que ella. Sin embargo, conforme surge del expediente y prueba presentada, la persona que estuvo ocupando el puesto de la señora Russe, era otro empleado de la Farmacia de Gurabo, quien llevaba aproximadamente dos (2) años trabajando para la compañía, y había sido ubicado de forma temporera, entiéndase, por el periodo de tres (3) meses que estaría la apelante tomando su

adiestramiento en Gurabo. De igual forma, no era la primera ocasión que el Lcdo. Álvarez estaría cubriendo el puesto de la señora Russe, debido a que era la persona que casi siempre llamaban si lo necesitaban en la Farmacia por una ausencia y/o vacaciones de la apelante.

Según el derecho antes expuesto, para que proceda una acción al amparo de la Ley Núm. 100, *supra*, le corresponde al empleado desfilar prueba de hechos específicos que configuren la modalidad de discrimen imputada, con el fin de que el juzgador tenga base racional para inferir que la acción tomada en su contra fue discriminatoria. *Díaz v. Windham Hotel Corp.*, supra, págs. 387-389. Así las cosas, luego de evaluar el expediente y argumentos de las partes, consideramos que la señora Russe no presentó prueba suficiente para establecer un caso *prima facie* de discrimen, sino que descansó en meras alegaciones para sostener su planteamiento.

De otra parte, la señora Russe arguye que la parte apelada tomó represalias en su contra, al haberse expresado que se sentía hostigada por su supervisora. A su vez, considera que el despojo de su puesto, el traslado a otra clínica y el despido constituyen una actuación de represalia.

Por su parte, NeoMed sostiene que la apelante no agotó el procedimiento de solución de disputas que establece su Reglamento, por lo que, no hubo un aviso por parte del empleado al patrono, privándolos de poder tomar alguna acción correctiva.

Conforme al estado de derecho, la Ley Núm. 115, *supra*, dispone que un empleado podrá establecer un caso *prima facie* de represalias demostrando que su patrono

tomó una acción adversa y que existe un nexo causal entre dicha acción y el ejercicio de la actividad protegida. *Velázquez Ortiz v. Mun. de Humacao*, 197 DPR 656, 668-669 (2017); *Marín v. Fastening Systems, Inc.,* supra, pág. 511. La relación causal puede establecerse mediante un criterio de proximidad temporal o evaluando cualquier otra evidencia que obre en el expediente. *Feliciano Martes v. Sheraton*, supra, pág. 400. Entre otras, se puede considerar si existió un patrón de conducta antagonista en contra del empleado, o si las razones articuladas por el patrono, para fundamentar su acción adversa, están plagadas de inconsistencia.

En el caso de autos, previo a la renuncia de la apelante, el Departamento de Recursos Humanos de NeoMed nunca recibió una queja en contra de la señora Santana, conforme lo requieren las normas establecidas por la compañía. Reconocen que, el señor Maisonet recibió el 21 de junio de 2019, un correo electrónico mediante el cual la apelante le comunicaba sobre el alegado hostigamiento por parte de la señora Santana. Sin embargo, dicha comunicación surgió luego de que ellos se reunieran el 19 de junio de 2019 para discutir el Plan de Mejoramiento. Así las cosas, determinamos que no se constituyó una represalia en contra de la señora Russe. Las supuestas actuaciones por la parte apelada no son acciones adversas en represalias hacia la apelante.

Finalmente, la señora Russe alega que fue despedida injustificadamente, puesto que, no había una justificación para que NeoMed la despojara de su puesto y la trasladara a la Farmacia de Gurabo, ya que no había incurrido en ninguna falta y sus evaluaciones eran excelentes.

NeoMed sostiene que la apelante no fue despedida, y tampoco sufrió un acto perjudicial. Señalan que, el Plan de Mejoramiento lo hicieron en base a su evaluación y desempeño, además que tomaron en consideración las declaraciones de los Técnicos de Farmacia, a quienes ella supervisaba. Por lo tanto, habían procedido a trasladarla de manera temporera a la Farmacia de Gurabo, y una vez finalizara su adiestramiento regresaría a la regencia de la Farmacia en Trujillo Alto.

Según expusimos en el derecho, la Ley Núm. 80, *supra*, crea una presunción de que todo despido es injustificado, por lo que le corresponde al patrono, mediante preponderancia de prueba, demostrar lo contrario. Esto supone que la activación de la referida presunción tiene por condición o hecho básico que medie el despido del empleado por parte del patrono. Ver, *Rivera Figueroa v. The Fuller Brusch, Co*, supra, pág. 907. Por tanto, la renuncia voluntaria del empleado a su puesto no activa la presunción aludida.

A su vez, nuestro ordenamiento laboral también contempla la figura jurídica del despido constructivo, según el cual la renuncia del empleo es motivada por actuaciones del patrono dirigidas a inducirlo o forzarlo a renunciar. *Rivera Figueroa v. The Fuller Brusch, Co.*, supra, pág. 907. Al evaluar si ha acontecido un despido constructivo hemos de examinar las siguientes situaciones para determinar si el patrono forzó al empleado a renunciar: si le impuso o intentó imponer condiciones de trabajo más onerosas, reducirle el salario, rebajarlo en categoría, o someterlo a vejámenes o humillaciones de hecho o de palabra. *Íd*. Es decir, acontece el despido constructivo cuando actos

voluntarios e injustificados del patrono obligan al empleado a dejar su cargo, siendo esta la única alternativa razonable que le queda al renunciante. *SLG Hernández-Beltrán v. TOLIC*, supra, pág. 777.

Distinto a la presunción que surge en contra del patrono al despedir a un empleado, cuando interviene la renuncia por parte del empleado, corresponde a este último probar que acontecieron las condiciones aludidas en los párrafos que preceden, siendo dicha renuncia la única alternativa razonable.

Según surge del expediente, el 19 de junio de 2019, NeoMed llevó a cabo una reunión con la señora Russe para discutir el plan de desarrollo y cambio propuesto. Le notificaron que efectivo el 1 de julio de 2019, la apelante se debía reportar a la Farmacia en Gurabo, donde trabajaría por tres (3) meses, con el propósito de que pudiera recibir unos adiestramientos. Sin embargo, la señora Russe no estuvo de acuerdo. El 1 de julio de 2019, día que la apelante debía reportarse en Gurabo, se presentó en la Farmacia de Trujillo Alto, indicando que su puesto que era la regente de dicha farmacia, y que era su responsabilidad lo que allí surgiera. Al día siguiente, luego de unos acontecimientos, la apelante no se presentó a trabajar a ninguna de las farmacias, y envió un certificado médico indicando que estaría fuera del 1 al 5 de julio de 2019. Sin embargo, la semana del 8 al 12 de julio de 2019, tampoco se presentó a trabajar, ni envió comunicación verbal, ni por escrito. Así las cosas, el 12 de julio de 2019, conforme establece el Reglamento de empleados de NeoMed, se considerará un abandono de empleo cuando el empleado se ausente por tres (3) días o más sin notificar, por lo que, le

enviaron una carta de abandono de funciones a la apelante, sin embargo, nunca fue reclamada.

El 18 de julio de 2019, la señora Russe, envió un correo electrónico con un certificado médico del Hospital Panamericano, el cual indicaba que estuvo fuera de sus funciones desde el 9 al 19 de julio de 2019. Posteriormente, el 5 de agosto de 2019, la parte apelada recibió una comunicación de la señora Russe indicando que se veía forzada a renunciar a su empleo efectivo el 31 de julio de 2019.

En virtud de lo anterior, determinamos que no acontecen los supuestos jurisprudenciales que justifiquen reconocer que hubiese mediado un despido constructivo en este caso. Del expediente surge que, la apelante se rehusó a acudir a la Farmacia en Gurabo para recibir los adiestramientos necesarios en los cuales necesitaba mejoría. En el documento relacionado a la solicitud del puesto, establece como parte de los deberes y responsabilidades: "será responsable de cumplir con los adiestramientos requeridos por NeoMed Center Inc., para la estructuración e implementación de todas las normas y procesos de los servicios farmacéuticos."[11]

En esencia, este caso no resulta suficiente en derecho para sostener la teoría legal de que la señora Russe renunció a su empleo porque NeoMed le quiso imponer condiciones de trabajo más onerosas, reducirle el salario, rebajarlo en categoría o someterlo a vejámenes o humillaciones de hecho o de palabra. Al contrario, la parte apelada intentó implementar un Plan de

---

[11] Véase, págs. 225-230 del apéndice digital del recurso.

Mejoramiento, el cual buscaba que esos deberes y responsabilidades fueran cumplidos por parte de la apelante, sin embargo, ésta se rehusó. Por consiguiente, no se figuró el despido constructivo, y procedía la desestimación de la causa de acción por despido injustificado, al amparo de la Ley Núm. 80, *supra*.

En conclusión, no hallamos razón para diferir sobre la decisión del foro primario al avalar la solicitud de sentencia sumaria presentada por la parte apelada.

**IV.**

Por los fundamentos antes expuestos, se **CONFIRMA** la *Sentencia* apelada

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones